74 P.3d 33

Frank HAMADA; Vernon G. Koike, Trustee for the Benefit of VLC, Inc. Money Purchase Pension Plan and VLC, Inc. Profit Sharing Plan; Koichi Ohara; Pacific Consultants, Inc.; and Hiroshi Shimada, Petitioners–Appellees,

v.

Jay WESTCOTT; Waikiki Beach Ice Cream, Inc.; and Akahi Hawaii, Inc., Respondents–Appellants.

Jay Westcott; Waikiki Beach Ice Cream, Inc.; and Akahi Hawaii, Inc., Petitioners–Appellants,

v.

Frank Hamada; Vernon G. Koike, Trustee for the Benefit of VLC, Inc. Money Purchase Pension Plan and VLC, Inc. Profit Sharing Plan; Koichi Ohara; Pacific Consultants, Inc.; and Hiroshi Shimada, Respondents–Appellees.

Nos. 23124, 23125.

Supreme Court of Hawai'i.

Aug. 7, 2003.

As Corrected Aug. 11, 2003.

Jason F. Oliver and Ann C. Kemp (Oliver, Lau, Lawhn, Ogawa & Nakamura), on the briefs, for appellants.

James A. Nakano, Russell K. Saito, and Ann S. Isobe (Devens, Nakano, Saito, Lee, Wong & Ching), on the briefs, for appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, JJ., and Circuit Judge CRANDALL, assigned by reason of vacancy.

Opinion of the Court by ACOBA, J.

In the absence of an express authorization by statute, as is the case here, we hold that attorneys' fees and costs may not be awarded in an arbitration proceeding unless the governing arbitration agreement provides for such an award. The underlying arbitration agreement lacked any provision authorizing an award of attorneys' fees and costs to the prevailing party. Accordingly, the January 4, 2000 order of the first circuit court (the court)[1] which confirmed an arbitrator's award of attorneys' fees and costs must be reversed.

1. The Honorable Gail Nakatani presided over this case.

## I.

On July 31, 1996, Petitioners–Appellees Frank Hamada; Vernon Koike, Trustee for the Benefit of VLC, Inc. Money Purchase Pension Plan and VLC, Inc. Profit Sharing Plan; Koichi Ohara; Pacific Consultants, Inc.; and Hiroshi Shimada (collectively Appellees) entered into a stock purchase agreement (purchase agreement) with Respondent–Appellant Jay Westcott (Westcott) to acquire all capital stock in PJM Hawai'i, Inc. (PJM).

The purchase agreement contained a provision indicating that "any dispute" under the agreement was to be submitted to arbitration.[2] This arbitration provision did not contain any reference to attorneys' fees. A separate provision within the document stated that each party shall bear their own legal costs and expenses in the "consummation" of the contract.[3] Only one provision related to attorneys' fees, stating that each party shall "be fully liable for any and all damages, costs and expenses (including, but not limited to, reasonable counsel fees) sustained or incurred[,]" in the event of a willful breach of the purchase agreement *prior to closing*.[4] It is undisputed that this final provision is inapplicable to the instant case as there were no allegations of early termination or willful breach prior to closing.

Westcott purchased the stock in PJM to obtain the rights to a store lease at the Royal Hawaiian Shopping Center. It was agreed that Westcott would absorb PJM into Akahi. On the same day, a separate letter document entitled "Contingent Payment to Stockholders" was signed, wherein the parties agreed that Westcott would pay Appellees twenty-five percent of the net profit realized upon sale of the lease or any part of the lease. The letter document made no mention of attorneys' fees.

On September 16, 1996, Akahi agreed to sell a portion of the lease to Bluebell Hawaii, Ltd. (Bluebell). On October 31, 1996, a separate agreement was entered into between Akahi and Bluebell, providing for additional monthly payments to be paid over an eight year period, which would total $1,080,000. A dispute arose over whether the monthly payments agreed upon by Akahi and Bluebell were to be included in determining the twenty-five percent net profits that Westcott had agreed to pay Appellees in the separate "Contingent Payment to Stockholders" letter document.

As stated by Appellants' counsel, it was uncertain as to whether the arbitration provision in the purchase agreement applied to the letter document which was the cause of the dispute. However, all parties voluntarily agreed to submit the dispute to arbitration

2. The arbitration clause, provision 12.13, states in its entirety that

 [a]ny dispute arising under this Agreement shall be submitted by the parties to, and shall be settled by binding arbitration in Hawaii, pursuant to the rules then pertaining to the American Arbitration Association and judgment upon the arbitrator's award may be entered in any court having jurisdiction thereof.

3. Provision 12.04 entitled "Allocation of Costs and Expenses," states:

 *Except as otherwise specifically provided herein, all legal and other costs and expenses incurred in connection with* the preparation, execution and delivery of this Agreement and *the consummation of the transactions contemplated hereby shall be paid by the Sellers or the Purchasers,* as the case may be, *depending upon which party incurred such costs and expenses.* (Emphases added.) This provision obviously rebuts the position of Respondents–Appellants Westcott, Waikiki Beach Ice Cream Inc., and Aikahi Hawaii, Inc. (collectively, Appellants) that the purchase agreement grants the arbitrator au-

thority to award attorneys' fees inasmuch as it indicates that the parties were to bear their own legal and other costs as to the consummation of the agreement, except in the event of an early termination.

4. Provision 11.02, relating to termination "at any time prior to the Closing[,]" states:

 If this Agreement is terminated as permitted by Section 11.01, such termination shall be without liability of either party (or any shareholder, director, officer, employee, agent, consultant or representative of such party) to the other party to this Agreement; *provided that if such termination shall result from the willful failure of a party to fulfill a condition to the performance of the obligations of the other party or to perform a covenant of this Agreement, such party shall be fully liable for any and all damages, costs and expenses (including, but not limited to, reasonable counsel fees) sustained or incurred by the other party or parties as a result of such failure or breach.* (Emphasis added.)

and signed a *new* arbitration agreement dated November 19, 1998.[5] This arbitration agreement stated that "[t]he Parties agree that the decision and award of the Arbitrator shall be final, conclusive and binding upon the Parties and shall constitute a final resolution and determination of the issues submitted." Additionally, the new arbitration agreement provided that "[t]his Agreement constitutes the entire and complete agreement of the Parties regarding the Arbitration hereby submitted, and shall not be modified, waived, nor amended without the express written consent of the Parties." The arbitration agreement made no reference to attorneys' fees or costs.

On June 25, 1999, a "stipulation of facts and issues" was submitted to the arbitrator. The stipulation did not refer to attorneys' fees or costs. However, Appellees requested attorneys fees' and costs in a pre-hearing statement and in the final arbitration brief. Because pre-hearing statements were filed simultaneously, Appellants did not contest the issue until the arbitrator requested evidence of the number of attorney hours worked. At this point, Appellants contested the authority of the arbitrator to award fees and costs.

On September 3, 1999, the arbitrator issued his decision, ruling that the monthly payments were to be included in determining "net profits" and that certain costs were deductible. Accordingly, the arbitrator awarded Appellees past damages of $208,800.29, prejudgment interest of $37,240.49, and future damages based on twenty-five percent of the monthly payments made. The arbitrator further ruled that Appellees were the prevailing parties and retained jurisdiction until the issue of attorneys' fees and costs was resolved, and a final award entered.

On October 14, 1999, after receiving briefs on the issue, the arbitrator awarded Appellees attorneys' fees of $106,495.79 and costs of $5,755.70. Appellees thereafter filed a motion for an order to confirm the arbitration award, and Appellants filed a motion to modify the award by deleting the provision granting attorneys' fees and costs. On January 4, 2000, the court granted the motion to confirm the arbitration award and denied the motion to modify.

## II.

On appeal, Appellants contend that: (1) the parties did not agree to arbitrate the issue of attorneys' fees;[6] (2) a party cannot be required to arbitrate an issue outside the scope of the arbitration agreement; and (3) the court erred in confirming the arbitrator's award. Contrarily, Appellees argue that: (1) because the language of the purchase agreement stated that "any dispute" must be resolved in arbitration, the arbitrator had authority to award attorneys' fees; (2) the matter of attorneys fees was submitted to the arbitrator by way of a pre-hearing brief; (3) arbitrators have been allowed to award "prejudgment interest" without express authority; and (4) the arbitrator had the authority to award attorneys' fees and costs pursuant to Hawai'i Revised Statutes (HRS) § 607–14 (Supp.1997).[7]

5. The parties who signed the arbitration agreement, in the order of signature, were Vernon G. Koike, Pacific Consultants, Inc. (signed by its president, Stephen M. Yoshihara), Frank Hamada, Koichi Ohara, Hiroshi Shimada, Jay Westcott, Waikiki Beach Ice Cream, Inc. (signed by its president, Jay Westcott), and Akahi Hawaii, Inc. (signed by its president, Jay Westcott).

6. Appellants concede that the arbitrator's decision should stand as to the substantive issues. On appeal, Appellants contest only the arbitrator's authority to award attorneys' fees.

7. HRS § 607–14 provides, in pertinent part, as follows:

*In all the courts, in all actions in the nature of assumpsit* and in all actions on a promissory note or other contract in writing that provides for an attorneys' fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. *The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.*
(Emphases added.)

## III.

■ HRS §§ 658–9 (1993) [8] and 658–10 (1993) [9] provide for circumstances under which a court may vacate or modify an award.[10] *See Gepaya v. State Farm Mut. Auto. Ins.*, 94 Hawai'i 362, 365, 14 P.3d 1043, 1046 (2000) (explaining that the only grounds for vacating or modifying an arbitration award is pursuant to HRS §§ 658–9, 658–10, or "to allow remand to the arbitrator to clarify an ambiguous award" or "to allow vacation of an arbitration award clearly violative of public policy"). Of particular relevance, HRS § 658–10(2) states that "[w]here the arbitrators have awarded upon a matter not submitted to them," an award may be modified. In addition, HRS 658–9(4) states that an award may be vacated *"[w]here the arbitrators exceeded their powers,* or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made." (Emphasis added.) Thus, this court has the authority to determine whether an arbitrator exceeded the scope of his or her authority. *Accord Brennan v. Stewarts' Pharmacies, Ltd.*, 59 Haw. 207, 209, 579 P.2d 673, 675 (1978) (concluding that an "award must be set aside for the reason that the arbitrators went beyond their powers").

## IV.

### A.

■ "The scope of an arbitrator's authority is determined by the [relevant] agreement." *Wayland Lum Constr. v. Kaneshige*, 90 Hawai'i 417, 422, 978 P.2d 855, 860 (1999) (citing *Clawson v. Habilitat, Inc.*, 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989); *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 75, 919 P.2d 969, 987 (1996)). Accordingly, "[w]hat issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the wording of the contractual agreement to arbitrate." *Id.* (citing *Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc.*, 78 Hawai'i 107, 113, 890 P.2d 694, 700 (App.1995)). Appellees maintain that the purchase agreement controlled the scope of the arbitrator's authority because the purchase agreement stated that "[a]ny dispute arising under this Agreement ... shall be settled by binding arbitration[.]" We cannot agree with this argument. The arbitration clause in the purchase agreement makes no reference to attorney's fees and costs, but

8. HRS § 658–9 provides as follows:

In any of the following cases, *the court may make an order vacating the award,* upon the application of any party to the arbitration:
(1) Where the award was procured by corruption, fraud, or undue means;
(2) Where there was evident partiality or corruption in the arbitrators, or any of them;
(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;
(4) *Where the arbitrators exceeded their powers,* or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.
Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.
(Emphases added.)

9. HRS § 658–10 pertains to the modification or correction of an award. This statute states that

[i]n any of the following cases, *the court may make an order modifying or correcting the award,* upon the application of any party to the arbitration:
(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
(2) *Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;*
(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.
(Emphases added.)

10. We observe that in 2001, HRS chapter 658 was replaced by a modified version of the Uniform Arbitration Act. HRS chapter 658 is still applicable to the instant case, however, as HRS § 658A–3 (2001) explicitly states that "this chapter governs an agreement to arbitrate *made on or after July 1, 2002."* (Emphasis added.) The arbitration agreement was made on November 19, 1998.

refers to the issues to be resolved. Where the parties intended to provide for attorney's fees and costs in the purchase agreement, they expressly said so. As mentioned previously, a provision for attorneys' fees is set out only in the event of an early termination of the agreement prior to closing. Such an event did not take place. Otherwise, the purchase agreement provided that all other legal costs would be borne by the parties themselves.

Also, no provision was made for attorneys' fees in the general arbitration clause of the purchase agreement. In light of the fact that the parties specifically provided that attorneys' fees would be paid only with respect to a particular event, and did not refer to such fees in the other provisions or in the arbitration provision, it is apparent that the parties deliberately chose to omit an award of attorneys' fees except where specifically provided for.

It appears that the parties entered into a new arbitration agreement and additional stipulations of fact rather than proceed under the purchase agreement. Rather than employing the arbitration clause in the purchase agreement, the parties drafted and signed the new arbitration agreement. As stated previously, that arbitration agreement operated exclusively of any prior arbitration clause (assuming any was applicable), stating that it was "the entire and complete agreement of the Parties regarding the Arbitration hereby submitted" to the arbitrator. That arbitration agreement did not make any reference to the award of attorneys' fees.

 The new arbitration agreement stated, in reference to what was to be arbitrated, that "[t]he dispute involves the claim of fraud in inducement of the Stock Purchase Agreement and the amount of payment owed to the PJM STOCKHOLDERS." In a miscellaneous section, the agreement made a reference to the payment of the arbitrator's fees, but made no mention of attorneys' fees or costs. "An arbitration agreement, like any contract, must be construed to give effect to the intention of the parties." *Moss v. American Int'l Adjustment Co.*, 86 Hawai'i 59, 62–63, 947 P.2d 371, 374–75 (1997) (citations omitted).

The plain wording of the arbitration agreement, which was signed subsequent to the purchase agreement, indicates that the parties intended that the new arbitration agreement would control the arbitration. *Cf. Wayland Lum Constr.*, 90 Hawai'i at 422, 978 P.2d at 860 ("As with other contractual agreements, the parties may modify the agreement defining the scope of the arbitrator's powers and authority." (Citing *Clawson*, 71 Haw. at 78, 783 P.2d at 1231.)). As stated earlier, the new agreement plainly stated that "[t]his Agreement constitutes *the entire and complete agreement* of the Parties *regarding the Arbitration hereby submitted,* and shall not be modified, waived, nor amended without the express written consent of the Parties." (Emphases added.)

The new arbitration agreement itself did not contain language indicating that attorneys' fees or costs are a subject for arbitration. The agreement did not expressly extend to the arbitrator the power to award the prevailing party attorneys' fees and costs. Thus, as the arbitration agreement was silent as to fees and costs, we hold that there was no grant of authority to the arbitrator to rule on this issue.

### B.

To the same effect is *Baldonado v. Liberty Mut. Ins. Co.*, 81 Hawai'i 403, 917 P.2d 730 (App.1996). In that case a dispute over damages recoverable under an uninsured motorist coverage plan was submitted to arbitration, pursuant to an insurance policy provision. *See id.* at 404, 917 P.2d at 731. The policy was "silent on the matter of attorneys' fees and costs." *Id.* at 405, 917 P.2d at 732. After the arbitrator issued his decision in favor of the plaintiff, the plaintiff submitted a post-hearing motion for recovery of attorneys' fees and costs to the arbitrator. *See id.* Before the arbitrator could decide the motion, the plaintiff filed a motion in the circuit court to confirm the arbitration award and to award attorneys' fees, costs, and interest. *See id.* The court denied this motion. *See id.* The plaintiff then filed a motion to remand the issue of fees and costs to the arbitrator, which was also denied. *See*

*id.* at 406, 917 P.2d at 733. Later, the arbitrator issued a supplemental decision awarding attorneys' fees and costs. *See id.* The insurance company filed a motion to vacate the award, which was granted. *See id.*

On appeal, the Intermediate Court of Appeals (ICA) held that, because the issues submitted in the agreement to arbitrate did not include attorneys' fees and costs, the arbitrator's supplemental decision must be vacated. *See id.* at 407, 917 P.2d at 734. The ICA observed that "HRS §§ 658–1 and –2 specify that an issue is not an arbitrable issue unless made so by a 'provision in a written contract' or by an 'agreement in writing.'" *Id.* (citations omitted). Thus, the ICA reasoned that, as there was "no written contract or agreement in writing authorizing the arbitrator to decide the issues of attorney fees and costs of suit," the issue of attorneys' fees and costs "were not arbitrable issues and the arbitrator exceeded his powers when he rendered a decision on the issue." *Id.*

Other jurisdictions with statutes similar to HRS chapter 658 hold that attorneys' fees should not be awarded in arbitration where such are not submitted as an issue for decision. The grounds for vacating or modifying an arbitration award in New York are nearly identical to the grounds delineated in HRS § 658–9 and HRS § 658–10.[11] In *CBA Indus., Inc. v. Circulation Mgmt., Inc.*, 179 A.D.2d 615, 578 N.Y.S.2d 234 (1992), the appellate division held that "attorney's fees are specifically excluded unless they are expressly provided for in the arbitration agreement." *Id.* at 616, 578 N.Y.S.2d 234 (internal citations omitted). North Carolina arbitration statutes are also similar to HRS chapter 658.[12] Analogous to the case at hand, in *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 423 S.E.2d 747 (1992), *rehearing denied* 333 N.C. 349, 426 S.E.2d 708 (1993),

there was a dispute arising from a stock purchase agreement that stated, "Upon the request of either Seller or Purchaser, a dispute arising in connection with this Agreement shall be submitted to arbitration." *Id.* at 749. After deciding the merits of the case, the arbitrator did not award attorneys' fees, noting that "although the Stock Purchase Agreement provided for the recovery of legal fees under certain circumstances, the panel 'believes that it has no authority to award legal fees.'" *Id.* Nucor appealed this ruling and the superior court granted an award of attorneys' fees to Nucor. *See id.*

General Bearing then appealed the award of attorneys' fees to the court of appeals, which upheld the award. *See id.* General Bearing appealed again, and the Supreme Court of North Carolina ruled that the arbitrator's denial of attorneys' fees was correct, because the arbitrator had no authority to issue attorneys' fees. *See id.* The court maintained that the "'agreement to arbitrate' does not 'otherwise provide' for the inclusion of counsel fees, and such fees are not therefore allowable in the award[.]" *Id.* at 750. The court explained that "there are important policy considerations supporting this determination not to allow attorneys' fees in arbitration proceedings, unless provided by the parties," noting that the purpose behind North Carolina's arbitration statute was to "provide and encourage an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation—attorneys' fees." *Id.* (citations omitted).

## V.

We are not persuaded by Appellees' other arguments.

---

**11.** New York Civil Practice Law & Rules (N.Y.C.P.L.R.) 7511 (1998) pertains to the grounds for vacating or modifying an award. It provides that a court may vacate an award where "an arbitrator, or agency or person making the award exceeded his power[.]" N.Y.C.P.L.R. 7511(b)(1)(iii). Similarly, an award may be modified where "the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the

merits of the decision upon the issues submitted[.]" N.Y.C.P.L.R. 7511(c)(2).

**12.** General Statutes of North Carolina § 1–567.14(a)(2) (2000), states that an award may be modified or corrected where "the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted[.]"

Appellees claim that the issue of fees and costs was submitted to the arbitrator in a pre-hearing brief. However, as Appellants observe, the pre-hearing briefs were submitted simultaneously and Appellants had no opportunity to acknowledge, much less dispute, the submission of fees and costs as an arbitrable issue. Appellants claim to have objected to the issue once Appellees submitted evidence, such as time sheets, pertaining to the request of fees and costs.

■ The mere submission of an issue to an arbitrator does not *ipso facto* grant the arbitrator authority over such a claim. Although "public policy underlying Hawai'i law 'strongly favors arbitration over litigation, the mere existence of an arbitration agreement does not mean that the parties must submit to an arbitrator disputes which are outside the scope of the arbitration agreement.'" *Brown v. KFC Nat'l Mgmt. Co.,* 82 Hawai'i 226, 244, 921 P.2d 146, 164 (quoting *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 259, 842 P.2d 634, 645 (1992) (citations omitted)), *reconsideration denied,* 82 Hawai'i 360, 922 P.2d 973 (1996). The scope of an arbitrator's authority must arise from the controlling contract. *See Wayland,* 90 Hawai'i at 422, 978 P.2d at 860 ("The scope of an arbitrator's authority is determined by the agreement." (Citations omitted.)). "As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Cho Mark Oriental Food, Ltd. v. K & K Int'l,* 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992). Accordingly, Appellees' presentation of its claim to the arbitrator is not material to the question of what was within the arbitrator's scope of authority.

## VI.

Appellees maintain that this court's decision in *Kalawaia v. AIG Hawai'i Ins. Co.,* 90 Hawai'i 167, 977 P.2d 175 (1999), grants an arbitrator or a court the authority to award fees and costs. In *Kalawaia,* this court considered whether a court had the authority to amend an arbitration award to grant prejudgment interest. *See id.* at 172, 977 P.2d at 180. In holding that a court has "the authority to award interest commencing on the date of the arbitration award or later[,]" this court said that "arbitrators have the authority to make an award of interest *as part of the determination of the total amount of compensation* to which the prevailing party is entitled." *Id.* at 173 n. 11, 977 P.2d at 181 n. 11 (emphasis added). Thus, prejudgment interest was observed to be "an element of complete compensation." *Id.* at 172, 977 P.2d at 180 (quoting *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987) (citations omitted)).

■ In contrast to compensation awarded to a party, the well-accepted "American rule" is that "in the absence of contract or statute a litigant has no inherent right to have his [or her] attorney's fees paid by his [or her] opponent." [13] *Larsen v. Pacesetter Sys., Inc.,* 74 Haw. 1, 51, 837 P.2d 1273, 1297 (1992) (citation omitted); *see also Smothers v. Renander,* 2 Haw.App. 400, 404, 633 P.2d 556, 560 (1981) ("Attorney's fees may not be awarded absent statute, agreement, stipulation, or precedent authorizing the allowance thereof." (Citing *Yokochi v. Yoshimoto,* 44 Haw. 297, 353 P.2d 820 (1960); 10 C. Wright & A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2675 (1973).)). For example, in *Sammi Line Co. v. Altamar Navegacion,* 605 F.Supp. 72 (S.D.N.Y.1985), the question of attorneys' fees had not been submitted to arbitration. *See id.* at 73. The

---

13. Courts have held that there is a "bad faith exception" to the general rule that each party bears its own attorneys' fees in the absence of a contract or a statute. In *Todd Shipyards Corp. v. Cunard Line,* 943 F.2d 1056 (9th Cir.1991), the ninth circuit addressed this issue when an arbitrator awarded attorneys' fees and costs because a party had acted in bad faith and delayed the proceedings. *See id.* at 1064. The issue of attorneys' fees had not been submitted to arbitration. The ninth circuit determined that, generally, an arbitrator could not award attorneys' fees to a prevailing party "without any express contract authorization." *Id.* However, the ninth circuit observed that a "bad faith exception to the 'American Rule' is recognized in federal courts[.]" *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165 (9th Cir.1989)). As there are no allegation of bad faith in the instant case, we do not address the issue further.

218

*Sammi* court stated that, "[s]ince the traditional American rule is that attorneys' fees are generally not awarded, and the arbitrators may decide only issues submitted for arbitration, the burden is on respondent to demonstrate that an award of attorneys' fees was included within the scope of the arbitrable issues." *Id.* at 73–74. Expounding, the *Sammi* court stated that "[a]ll that is required to accomplish this result [of allowing the arbitrator to award attorneys' fees] is, of course, a single additional sentence in the standard form to make clear this intention." *Id.* at 74 n. 2. The court concluded that the "[r]espondent cannot validly assert the existence of a custom so universal that the parties may be deemed to have agreed to arbitration with an understanding that attorneys' fees might be awarded[,]" as "the general understanding is to the contrary." *Id.* at 74 (citations omitted). We believe that such a rule is a salutary one and confirms, in light of the traditional American rule, that attorneys' fees and costs are generally not awardable. Such an award may not be made by an arbitrator unless mandated by statute or expressly allowed in the arbitration agreement.

VII.

■ Appellees finally contend that the award of attorneys' fees was authorized under HRS § 607–14. This statute states that attorneys' fees may be awarded "[*i*]*n all the courts, in all actions in the nature of assumpsit*[.]"[11] (Emphasis added.) The plain wording of HRS § 607–14 states that it is applicable "[i]n all the courts[.]" Clearly the statute applies only to court actions and not arbitration proceedings. The application of HRS § 607–14 to an arbitration agreement would run counter to the "general understanding" well established in this country that generally attorneys' fees and costs are not awarded unless provided for, *see Sammi,* 605 F.Supp. at 73–74, and in arbitration proceedings the arbitration agreement generally governs. Accordingly, HRS § 607–14 does not affect disputes submitted in arbitration. As alluded to previously, this approach best comports with affording through arbitration an expeditious, relatively uncomplicated, and less expensive forum for dispute resolution. *See Nucor Corp.,* 423 S.E.2d at 750.

VIII.

Pursuant to HRS § 658–10, we vacate the court's January 4, 2000 order confirming the arbitration award and remand with instructions, pursuant to HRS § 658–10, to modify the award by deleting the award of attorneys' fees and costs. However, we affirm the court's order insofar as it confirms the arbitration award of past damages of $208,800.29 and the prejudgment interest of $37,240.49 to Appellees.

14. HRS § 658A–21 (2001) states that "[a]n arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding." The effect or construction of this provision is yet to be determined.