**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000077
16-OCT-2014
08:56 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

In the Matter of the Grievance Arbitration Between

STATE OF HAWAII ORGANIZATION OF POLICE OFFICERS (SHOPO),
exclusive representative for Bargaining Unit 12, Police,
on behalf of SHELLY L. RODRIGUES, JAMES A. RODRIGUEZ,
and SHANE Y. SOKEI,
Grievants-Appellants,

and

COUNTY OF KAUA'I, and KAUA'I POLICE DEPARTMENT,
Employer-Appellees

NO. CAAP-10-0000077

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(S.P. NO. 09-1-0031)

OCTOBER 16, 2014

FOLEY, PRESIDING JUDGE AND FUJISE, J.
WITH GINOZA, J., CONCURRING AND DISSENTING SEPARATELY

OPINION OF THE COURT BY FOLEY, J.

Grievants-Appellants State of Hawaii Organization of
Police Officers (**SHOPO**), exclusive representative for Bargaining
Unit 12, Police, on behalf of Shelly L. Rodrigues (**Rodrigues**),
James A. Rodriguez (**Rodriguez**), and Shane Y. Sokei (**Sokei**) appeal

from the (1) September 20, 2010 "Order Granting in Part and Denying in Part Grievant SHOPO's Motion to Confirm Arbitrator's Award [Filed 7/20/10]" (**Order re Motion to Confirm**); (2) September 20, 2010 "Order Granting in Part and Denying in Part Employer's Counter-Motion to Vacate Filed August 5, 2010" (**Order re Counter-Motion to Vacate**); (3) August 6, 2009 "Order Denying Grievant SHOPO's Motion to Confirm Arbitrator's Award [Filed 6/23/09]" (**Order re Motion to Confirm**); and (4) August 6, 2009 "Order Granting in Part and Denying in Part Employer's Counter-Motion to Vacate [Filed 7/2/09]," (**Order re Counter-Motion to Vacate**) all entered in the Circuit Court of the Fifth Circuit[1] (circuit court).

On appeal, SHOPO contends the circuit court erred by:

(1) vacating the arbitrator's remedial promotion of Grievants by ruling that:

(a) the arbitrator's remedy was in excess of his authority under the collective bargaining agreement, effective from July 1, 2007 to June 30, 2011 (**CBA**), and in violation of Hawaii Revised Statutes (**HRS**) § 658A-23(a)(4) (Supp. 2001);

(b) CBA provisions allowing the arbitrator to "otherwise change[]" any action by Employer-Appellees County of Kaua'i (**County**) and Kaua'i Police Department (**KPD**) (collectively, **Employer**) that the arbitrator found to be unfair, unjust, or improper were unclear, vague and ambiguous, and "potentially" conflicted with Article 11 of the CBA and HRS § 89-9(d) (Supp. 2007);

(c) the arbitrator's remedy violated public policy; and,

(2) substituting its own interpretation of the CBA for that of the arbitrator in violation of CBA provisions that the arbitrator's decision be "final and binding."

## I.  BACKGROUND

Around May 22, 2007, Employer notified SHOPO that they would promote five (5) officers from an existing eligible list,

---

[1]     The Honorable Kathleen N.A. Watanabe presided.

compiled as the result of a written exam, consisting of ten (10) officers, including Rodrigues, Rodriguez, and Sokei (collectively, **Grievants**). The acting chief of police utilized an oral interview process to pick the officers for promotion.

On July 1, 2007, the new CBA under which SHOPO raises its points on appeal became effective.

On or about August 29, 2007, grievants received letters from KPD notifying them of their non-selection to the position of police sergeant.

On or around September 12, 2007, SHOPO filed grievances on behalf of Grievants, police officers with Employer. Grievants contested Employer's promotional process after they were not selected for promotion to the rank of police sergeant. SHOPO's grievances asserted *inter alia* that the promotion process was "subjective, arbitrary and capricious," heavily dependent on an inconsistent oral interview exam[2] and not based on merit, ability, or fair standards as required by Article 47 of the CBA[3] and various statutory and regulatory requirements for promotions within the civil service system. SHOPO requested promotion to sergeant for Grievants and retroactive payment of all salary and other benefits, rights, and privileges resulting from the

---

[2] The 10 questions used in the oral exam fell under five general categories: Trustworthiness, Cooperative & Collaborative Work Tendency, Adherence to a Work Ethic, Friendly Disposition, and Sensitive to the Interest of Others. The arbitrator concluded the questions "were very broad and could be interpreted and answered in a number of subjective ways" and lacked model answers against which the candidates answers could be judged.

[3] Parties disagree as to which version of the CBA should apply to the grievances. SHOPO contends this matter was grieved under the CBA effective from July 7, 2007 to June 30, 2011. In its answer, Employer asserts that the applicable CBA was effective from July 1, 2003–June 30, 2007. In his decision and award, the arbitrator cited to both the 2003-2007 and 2007-2011 CBAs. Both the 2003-2007 and 2007-2011 CBAs at issue were between SHOPO and the following entities: State of Hawaiʻi, City and County of Honolulu, County of Hawaiʻi, County of Maui, and County of Kauaʻi.

Differences between the text of the two CBA versions are unimportant because: the arbitrator found that the parties agreed the pertinent portions of both CBAs were substantially similar; the circuit court confirmed the arbitrator's findings; and neither party challenges this issue on appeal. Further, as discussed infra, legislative amendments to HRS § 89-9(d) (Supp. 2007) in 2007 apply to both CBAs because they were both in effect "on and after June 30, 2007." The July 1, 2003 - June 30, 2007 CBA was in effect on June 30, 2007 and the July 1, 2007 - June 30, 2011 CBA was in effect "after" June 30, 2007.

improper non-promotion.

In the "Arbitration Decision and Award" (**Award**) dated June 2, 2009, the arbitrator[4] found the oral interview portion of the promotional process did not address the requirements of the position and was subjective, arbitrary and capricious. The arbitrator found that the promotion process did not take into account the applicant's entire history, knowledge and abilities, and was not based on fair standards of merit and ability as required by the CBA.[5] He wrote, "[t]he varied instructions on what experience could be used in answering the oral questions by each candidate and the inconsistent treatment of the candidates renders the oral examination unfair, inconsistent, and arbitrary." The arbitrator further noted that Employer failed to meet with each grievant and provide the reasons for the employee's non-selection for promotion, in violation of the CBA.

The arbitrator ordered that Grievants be promoted to the position of sergeant with a retroactive effective date of September 23, 2007, and also mandated back pay and entitlement to any additional rights, benefits and privileges that would have resulted from promotion. The arbitrator also recommended that KPD and SHOPO meet to review, discuss and implement measures to improve the promotion process.

---

[4]    Larry L. Cundiff, Sr. served as arbitrator.

[5]    The Arbitrator concluded:

> The Employer's promotional oral interview procedure as administered by the [KPD] on August 20, 21, 2007, led to subjective, arbitrary and capricious promotional practice. The oral interview, as designed for these promotions, contains unacceptable and ambiguous standards, and if not rectified, could lead to future grievances filed on the part of unsuccessful candidates. The panel which administered the oral interviews, were not given a tool for the oral interviews that would allow for objective and fair scores. The evidence to support the final scores applied in these particular grievances, led this Arbitrator to the conclusion that the weight of the evidence supports a finding that the grievances of [Rodrigues, Rodriguez, and Sokei] are sustained.

On June 23, 2009, SHOPO filed a motion to confirm the arbitrator's Award in the circuit court. SHOPO argued that the Award was a proper exercise of the arbitrator's authority under Article 32(L)(9)(b)(2) of the CBA, which authorized him to set aside, reduce or otherwise change any action which the arbitrator finds "unfair, unjust, [or] improper." Employer opposed the motion to confirm and filed a counter-motion to vacate the arbitrator's award on July 2, 2009. Employer argued the arbitrator promoted the three officers based on his own criteria, exceeded his authority as arbitrator, and the remedial promotion violated public policy by encroaching on management's right to promote.

On August 6, 2009, the circuit court issued the Order re Motion to Confirm and Order re Motion to Vacate. The circuit court denied SHOPO's motion to confirm because "the Arbitrator's remedy exceeded the arbitrator's authority and powers granted under Article 32 of the [CBA] in violation of HRS § 658A-23(a)(4)."[6] The court granted in part and denied in part Employer's motion to vacate, confirmed that the grievances were properly before the arbitrator and within his jurisdiction and authority, and remanded for rehearing on the issue of remedy. On September 1, 2009, SHOPO filed a Notice of Appeal. In State of Hawaii Organization of Police Officers (SHOPO) v. County of Kauai, 123 Hawai'i 128, 230 P.3d 428 (App. 2010), this court dismissed the case for lack of appellate jurisdiction and held that the circuit court order denying a motion to confirm an award, vacating the award, and directing rehearing was not appealable pursuant to HRS § 658A-28(a)(3) (Supp. 2008). Id. at 132, 230 P.3d at 432.

---

[6] HRS § 658A-23 (Supp. 2002) provides

  **[§658A-23] Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

  . . . .

  (4) An arbitrator exceeded the arbitrator's powers[.]

Pursuant to the circuit court's August 6, 2009 orders, the parties met with the arbitrator and agreed to a rehearing through memoranda. On July 8, 2010, the arbitrator issued his ruling that the "Arbitrator's original remedy will remain unchanged based on the Arbitrator's reading and interpretation of the plain language and meaning of the 'Arbitrator's Authority,' as set forth in Article 32 of the applicable collective bargaining agreement." The arbitrator ruled that the CBA vested him with authority to resolve the grievances, the phrase "otherwise change[]" was clear and unambiguous, and the CBA placed no restrictions on his authority grant remedial promotions. He further found the remedy was consistent with past practices of the parties to the CBA and Employer had not contended during arbitration that Article 32 precluded remedial promotions.

On July 20, 2010, SHOPO filed a motion in the circuit court to confirm the arbitrator's award. On August 5, 2010, Employer filed a memorandum in opposition and a counter-motion to vacate. Employer argued that the arbitrator exceeded his authority because Article 11 of the CBA retained Employer's management rights over promotional procedures and that the arbitrator could not mandate promotion as a remedy.

On September 20, 2010, the circuit court filed its Order re Motion to Confirm, which confirmed the arbitrator's findings and decision in all respects except for the remedy. The circuit court found the remedial promotions were in excess of the arbitrator's authority under the CBA because the words "otherwise changed" in Article 32 of the CBA were "unclear, vague and ambiguous, [and] potentially conflict[ed] with Article 11 of the CBA and HRS § 89-9(d) [(Supp. 2012)]," and the remedy violates public policy.[7] The circuit court also filed the Order re

---

[7] The circuit court ruled on SHOPO's motion to confirm as follows:

> The [circuit court] grants the motion and confirms the Arbitrator's findings and decision in all respects, except for the Arbitrator's remedy. The [circuit court] denies the motion as it relates to the

(continued...)

6

Counter-Motion to Vacate which contained a substantially identical ruling.

On October 15, 2010, SHOPO filed a notice of appeal.

## II.   STANDARD OF REVIEW

An appellate court reviews "the circuit court's ruling on an arbitration award *de novo*," but is "mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential."  Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (citations, internal quotation marks, and brackets omitted).

"The scope of an arbitrator's authority is determined by agreement of the parties.  An arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted."  Clawson v. Habilitat, Inc., 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989).  "[W]here an arbitrator has exceeded his or her powers . . . pursuant to HRS § 658-9(4), [] the resulting arbitration award must be vacated."  Tatibouet, 99 Hawai'i at 235, 54 P.3d at 406.

> When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator.  Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.  This remains so even when the basis for the arbitrator's decision may be ambiguous.

W.R. Grace & Co. V. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757,

---

⁷(...continued)
> Arbitrator's remedy which the [circuit court] finds exceeded the arbitrator's authority and powers granted under Article 32 of the [CBA] in violation of HRS § 658A-23(a)(4).  The [circuit court] finds that the words "otherwise changed" as it relates to the Arbitrator'[s] authority granted under Article 32.L.9.b.(2) of the CBA is unclear, vague and ambiguous, potentially conflicts with Article 11 of the CBA and HRS § 89-9(d) and that the Arbitrator's remedy violates public policy.

764 (1983) (citations, internal quotation marks, and brackets omitted).

### III.  DISCUSSION

**A.  Employer was not estopped from challenging the award as exceeding the arbitrator's authority**

SHOPO contends that Employer was estopped from contesting the arbitrator's authority to grant remedial promotions pursuant to Article 11 or 32[8] of the CBA because it failed to raise this argument during the arbitration process. The doctrine of quasi-estoppel provides "that one should not be permitted to take a position inconsistent with a previous position if the result is to harm another."  <u>Univ. of Hawaii Prof'l Assembly on Behalf of Daeufer v. Univ. of Hawaii</u>, 66 Haw. 214, 221 659 P.2d 720, 726 (1983) (hereafter <u>UHPA</u>).

In <u>UHPA</u>, an employer agreed to submit tenure and promotion grievances to final and binding arbitration, but argued to the circuit court that the arbitrator was powerless to grant

---

[8]     Article 32(L)(9)(b), the arbitration clause of the 2007-2011 CBA between SHOPO and Employer, provided

> **9.  Arbitration Award**
>
> **b.  Final and Binding** - The award of the Arbitrator shall be accepted as final and binding.  There shall be no appeal from the Arbitrator's decision by either party, if such decision is within the scope of the Arbitrator's authority as described below:
>
> **(1) Limitations on Arbitrator's Powers** - The Arbitrator shall not have the power to add to, subtract from, disregard, alter, or modify any of the terms of this Agreement.
>
> **(2) Arbitrator's Authority** - The Arbitrator's authority shall be to decide whether Employer has violated, misinterpreted or misapplied any of the terms of this Agreement and in the case of any action which the Arbitrator finds unfair, unjust, improper or excessive on the part of Employer, such action may be set aside, reduced or otherwise changed by the Arbitrator.  The Arbitrator may, in the Arbitrator's discretion, award back pay to recompense in whole or in part, the employee for any salary of financial benefits lost, and return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered.

The arbitrator cites to this 2007-2011 version of the arbitration clause in his decision.  Pertinent language cited is identical to Article 32(L)(8) of the 2003-2007 CBA.

tenure or promotion upon a finding of arbitrary or capricious conduct. Id., 66 Haw. at 221-22; 659 P.2d at 725-26. The court held the employer was estopped from challenging the scope of the arbitrator's remedial authority. Id. The court reasoned that failure to raise this issue during arbitration proceedings, and then pursuing it in judicial proceedings, would make the UHPA grievants "substantially disadvantaged in terms of time and money spent in the arbitration process and in litigation." Id., 66 Haw. at 222, 659 P.2d at 726.

UHPA is distinguishable from the instant case. While both CBAs provided that an arbitrator's decision would be "final and binding[,]" the UHPA collective bargaining agreement expressly gave the arbitrator the right and power to "substitute his judgment for that of the official" if the arbitrator found the official's decision to be arbitrary or capricious, UHPA, 66 Haw. at 223, 659 P.2d at 727. By contrast, Article 11 of the 2003-2007 CBA, in this case expressly provides that Employer "reserves and retains, solely and exclusively, all management rights and authority, including the rights set forth in [HRS § 89-9(d)(1)-(8)], except as specifically abridged or modified by this Agreement."

SHOPO's other grounds for estoppel are unavailing. The arbitrator found: "Employer never contended during the arbitration hearings that the language in Article 32 was not sufficiently worded to permit the Arbitrator to grant a promotion to remedy the grievances[.]" Although Employer did not specifically appeal the arbitrator's finding and rather sought vacatur of the remedy, review of the arbitration award is properly before this court pursuant to HRS Chapter 658A and the County properly filed a motion to vacate. Furthermore, Employer did contest the arbitrator's authority to actually promote the grievants. The Arbitration Decision and Award summarized Employer's arguments to include:

> 7. The Arbitrator has no jurisdiction over the subjects raised by the Grievants.
>
> 8. The Grievants are not entitled to automatic promotions, or back-pay at the Sergeant's level.

We conclude that Employer is not estopped from asserting that the Arbitrator exceeded his authority in granting promotions to the three grievants.

### B.    The arbitration award did not violate public policy

On appeal, SHOPO argues the circuit court erred because HRS § 89-9(d) allowed negotiated "promotional criteria embodied in Article 47 and to have violations of that article resolved through the grievance procedure in Article 32" and that the remedy ordered by the Arbitrator was consistent with the public policy articulated by the Legislature to encourage arbitration by making the process more meaningful.  This court reviews whether "the contract as interpreted [by] an arbitrator violates some explicit public policy[.]"  Inlandboatmen's Union of the Pac., Hawai'i Region, Marine Div. of Int'l Longshoremen's & Warehousemen's Union v. Sause Bros., Inc., 77 Hawai'i 187, 193, 881 P.2d 1255, 1261 (App. 1994) (hereafter Inlandboatmen) (citation and original brackets omitted) (review is justified because public interests will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements).  "[I]f the contract as interpreted by an arbitrator violates some explicit public policy, the courts are obliged to refrain from enforcing it."  Id. at 193, 881 P.2d at 1261 (citation and original brackets omitted).  This public policy consideration is an exception to the general deference given arbitration awards.

> [T]he public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown.  Hence, a refusal to enforce an arbitration award must rest on more than speculation or assumption.

Inlandboatmen, 77 Hawai'i at 193-94, 881 P.2d at 1261-62 (citations, internal quotation marks, brackets, and ellipsis omitted).

At the August 17, 2010 hearing, Employer's counsel argued that the arbitrator's interpretation of the CBA "was in violation of [HRS] Chapter 76, [and] in violation of the merit

principles[.]" The circuit court found the arbitrator's remedial promotions remedy violated public policy: "[i]n particular it violates the employer's arena to develop . . . promotional criteria in concert with consultation with the union."

HRS § 76-1 (2012), entitled "Purposes; merit principle," provides:

> It is the purpose of this chapter to require each jurisdiction to establish and maintain a separately administered civil service system based on the merit principle. The merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance.

Id. (emphasis added).

HRS § 76-1(2) requires "[i]mpartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical[.]" Article 47(B) of the CBA, entitled, "Promotions," preserves the merit principle:

> **B. Fair Standards of Merit and Ability** "Promotions shall be based upon fair standards of merit and ability, consistent with applicable civil service statutes, rules and regulations and procedures."

Employers and employees are generally not permitted to negotiate an agreement that is inconsistent with the merit principle. See HRS § 89-9(d). HRS § 89-9(d), which codifies an employer's management rights in the context of a collectively bargained agreement, currently provides:

> (d) Excluded from the subjects of negotiations are matters of classification, reclassification, benefits of but not contributions to the Hawaii [Hawai'i] employer-union health benefits trust fund, or a voluntary employees' beneficiary association trust; recruitment; examination; initial pricing; and retirement benefits except as provided in section 88-8(h). The employer and the exclusive representative shall not agree to any proposal that would be inconsistent with the merit principle or the principle of equal pay for equal work pursuant to section 76-1 or that would interfere with the rights and obligations of a public employer to:
>
> (1) Direct employees;
>
> (2)    Determine qualifications, standards for work, and the nature and contents of examinations;
>
> (3)    Hire, promote, transfer, assign, and retain employees in positions;
>
> (4)    Suspend, demote, discharge, or take other disciplinary action against employees for proper

11

cause;

(5)     Relieve an employee from duties because of lack of work or other legitimate reason;

(6)     Maintain efficiency and productivity, including maximizing the use of advanced technology, in government operations;

(7)     Determine methods, means, and personnel by which employer's operations are to be conducted; and

(8)     Take such actions as may be necessary to carry out the missions of employer in cases of emergencies.

This subsection shall not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions as a permissive subject of bargaining during collective bargaining negotiations or negotiations over a memorandum of agreement, memorandum of understanding, or other supplemental agreement.

Violations of the procedures and criteria so negotiated may be subject to the grievance procedure in the collective bargaining agreement.

Id. (emphases added).

HRS § 89-9(d) represents the legislature's balance between policies of requiring employers to fulfill their "public responsibility[,]" which would include consistency with the merit principle, and a public policy of "allow[ing] the public employees and their employers free range in negotiating the terms of their contract[.]" State of Hawai'i Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists-Univ. of Hawai'i Chapter, 83 Hawai'i 378, 403, 927 P.2d 386, 411 (1996) (citation omitted). In regard to the latter, permitting parties to empower an arbitrator to grant remedial promotions makes their CBA "that much more meaningful, since the confidence of the workers in the equity of the agreement is strengthened when they know that any dispute over the meaning of the contract may be submitted to an impartial third party for decision." UHPA, 66 Haw. at 223, 659 P.2d at 727 (citation and internal quotation marks omitted).

"HRS § 89-9(d)[(1993)] contains an exception to the merit system principle that authorizes the employer and exclusive representative to specify grievance procedures related to

promotions and demotions."[9]   Hoopai v. Civil Serv. Comm'n, 106
Hawaiʻi 205, 223, 103 P.3d 365, 383 (2004).   The Hoopai court
held:

> Based on the statute's plain language, HRS § 89-9(d)
> generally prohibited Employers and the [employee union]
> from negotiating a collective bargaining agreement
> "inconsistent with merit principles" including provisions
> that interfere with the rights of an employer to promote,
> transfer or demote employees.  As signified by the word
> "provided" in HRS § 89-9(d), however, this prohibition is
> subject to two qualifications permitting the employer and
> the exclusive representative to (1) negotiate, inter alia,
> promotion and demotion procedures and (2) a grievance
> process to remedy violations of such procedures.

Hoopai, 106 Hawaiʻi at 221, 103 P.3d at 381 (emphasis added).

Although the Hoopai holding was based on a prior and
different version of HRS § 89-9(d), the legislative history of
HRS § 89-9(d) shows that subsequent amendments strengthened
Hoopai's interpretation of HRS § 89-9(d) as excepting
negotiations over promotions and grievance processes from the
general requirement of consistency with the merit principle.  See
2007 Haw. Sess. Laws Act 58, § 1 at 100-01; Hoopai, 106 Hawaiʻi
at 223, 103 P.3d at 368.  Critics interpreted Act 58 (S.B. 1642)
as enlarging the scope of issues subject to collective bargaining
negotiations and eroding the scope of management rights.[10]
Amendments to HRS § 89-9(d) in 2007 did not invalidate Hoopai's
relevant holding on exceptions to the merit principle but rather
strengthened Hoopai's interpretation.[11]  See Hoopai, 106 Hawaiʻi

---

[9]     HRS § 89-9(d) does not reserve an exclusive right to management to
determine promotion procedures.  See Univ. of Hawaii Professional Assembly v.
Univ. of Hawaii, 66 Haw. 207, 211-12, 659 P.2d 717, 719-20 (1983); S. Stand.
Comm. Rep. No. 745, in 1970 Senate Journal, at 1332 ("[T]here is no reason to
limit the scope of negotiation insofar as terms agreed to in the course of
collective bargaining . . . does [sic] not interfere with the rights of public
employer to carry out its public responsibilities.").

[10]     On April 24, 2007, State of Hawaiʻi Governor Linda Lingle vetoed
S.B. 1642 because "it constitutes an unacceptable infringement upon management
rights[.]"  Governor's Message No. 793, "Statement of Objections to Senate
Bill No. 1642," in 2007 Senate Journal, at 805-06.  In accordance with article
III, section 17 of the Hawaiʻi Constitution, the Senate issued an override of
the Governor's veto.  See S.B. No. 1642, S.D. 1, H.D. 1, 2007 Senate Journal,
at 892-93.

[11]     Because Hoopai applies to our interpretations of public policy
exceptions under HRS § 89-9(d) before and after 2007, we need not determine
whether the 2003-2007 or the 2007-2011 version of the CBA was the appropriate
document.

at 221, 103 P.3d at 381.

In 2007, the Hawai'i legislature amended pertinent provisions of HRS § 89-9(d) by removing the following passage:

> The employer and the exclusive representative <u>may</u> negotiate procedures governing the promotion and transfer of employees to positions within a bargaining unit; the suspension, demotion, discharge, or other disciplinary actions taken against employees within the bargaining unit; and the layoff of employees within the bargaining unit. Violations of the procedures so negotiated may be subject to the grievance procedure in the collective bargaining agreement.

2007 Haw. Sess. Laws Act 58, § 1 at 100-01 (emphasis added).

This passage was replaced with language stating, "[t]his subsection <u>shall</u> not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions[.]" HRS § 89-9(d). We note that in the instant case, CBAs dated July 1, 2003 - June 30, 2007 and July 1, 2007 - June 30, 2011 were effective, alternately, "on" and "after" June 30, 2007; the arbitrator recognized his authority to act under Article 32 of both CBAs; and therefore HRS § 89-9(d) amendments applied to the arbitrator's actions under the CBAs.

The legislature's 2007 amendments to HRS § 89-9(d) were made in light of <u>United Public Workers, AFSCME, Local 646, AFL-CIO v. Hanneman</u>, 106 Hawai'i 359, 105 P.3d 236 (2005), wherein the Hawai'i Supreme Court held that management rights under HRS § 89-9(d) precluded collective bargaining over the City and County of Honolulu's unilateral decision to transfer refuse workers. <u>See</u> 2007 Haw. Sess. Laws Act 58, § 1, at 100-01. Under <u>Hanneman</u>, the scope of topics subject to negotiation cannot "infringe upon an employer's management rights under [HRS § 89-9(d)]." <u>Hanneman</u>, 106 Hawai'i at 365, 105 P.3d at 242. The purpose of the 2007 amendments was to clarify that management rights enumerated in HRS § 89-9(d) do not invalidate or preclude negotiations concerning agreements on "procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions[.]" <u>See</u> S. Stand. Comm. Rep. No. 889, in 2007 Senate Journal, at 1438 ("[t][he purpose of this measure is to amend

[HRS § 89-9(d)] by clarifying that certain statutory actions shall not be used to invalidate collective bargaining agreements in effect on and after June 30, 2007, and such actions may be included in collective bargaining agreements."). The Senate Committee stated:

> In interpreting the Hanneman case, one cannot disregard the [collectively bargained Memoranda of Agreements (MOA)] that determined the transfer of these employees. Therefore, the transfer was found to be in concert with these MOAs. The MOAs were allowed under [HRS § 89-9(d)], and therefore, either party had the right to exercise their rights under these MOAs. Your Committee believes that the Hawaii [Hawai'i] Supreme Court was upholding the management rights as derived from the MOAs.
>
> However, some have viewed the Hanneman case allowing management rights generally whether or not MOAs are involved.

S. Stand. Comm. Rep. No. 889, in 2007 Senate Journal, at 1438. This legislative report discloses an intent to address an interpretation of HRS § 89-9(d) under Hanneman that would allow management rights irrespective of their existence under an agreement. Under this interpretation of Hanneman, promotions fell within the scope of management rights under HRS § 89-9(d) and would therefore lie outside of the scope of the CBA and the arbitrator's authority to act under it. Hanneman, 106 Hawai'i at 365, 105 P.3d at 242.

The House Committee on Labor & Public Employment found that 1988 amendments to HRS § 89-9(d) "expand[ed] the scope of collective bargaining in the public sector . . . [and] was intended to protect contract provisions that would otherwise be considered invalid due to a literal interpretation of what are considered to be management rights." H. Stand. Comm. Rep. No. 1465, in 2007 House Journal, at 1595. The House Committee understood proposed amendments in 2007 were meant to "clarify the rights of public employees to engage in collective bargaining under [HRS Chapter 89], in light of recent court decisions, [Hoopai and Hanneman]." H. Stand. Comm. Rep. No. 1465, in 2007 House Journal, at 1595.

Consistent with the legislative intent of 2007 amendments, we interpret the CBA in light of new provisions of the amended HRS §89-9(d).

Article 11 of the CBA provided: "[t]he Employer reserves and retains, solely and exclusively, all management rights and authority, including the rights set forth in [HRS § 89-9(d)(1)-(8)], except as specifically abridged or modified by this Agreement."

Article 47(B) required that promotions be based on merit and "consistent with applicable civil service statutes," which include HRS §§ 76-1 and 89-9(d).

Article 32(L)(9)(b)(2) authorized the arbitrator "to decide whether the Employer has violated, misinterpreted or misapplied any of the terms of [the CBA] and in the case of any action which the Arbitrator finds unfair, unjust, improper or excessive on the part of the Employer, such action may be set aside, reduced or otherwise changed by the Arbitrator." The arbitrator interpreted this provision as authorizing him "to grant the promotions as part of the remedy to resolve the grievances[.]"

Employer contends the arbitrator exceeded his powers under HRS § 89-9(d), which retains promotions as a management right that lies outside of the scope of the CBA. Subsequent amendments to HRS § 89-9(d), however, clarified that CBA provisions in effect on or after June 30, 2007 would not be invalidated under HRS § 89-9(d). Article 11 of the CBA is consistent with the amended HRS § 89-9(d) inasmuch as it stated Employer's management rights under HRS § 89-9(d) would be retained "except as specifically abridged or modified by this Agreement."

Provisions under Article 11 for Employer's retention of its "management rights" under HRS § 89-9(d) absent specific abridgment or modification must be read in concert with Article 32, which authorized the arbitrator to determine "whether the Employer violated, misinterpreted, or misapplied any of the terms of this [CBA]" and to "determine whether the Arbitrator has jurisdiction to act" in disputes over arbitrability.

Our review of the arbitrator's construal of the CBA must consider policies of judicial deference. UHPA, 66 Haw. at

16

225, 659 P.2d at 728 ("[T]he fact that an arbitrator may err in applying the law, finding facts, or in construing the contract, or enters an award that is contrary to the evidence adduced, is insufficient grounds for judicial reversal."). Employer, by agreeing to submit to arbitration, "assume[d] all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." Daiichi Hawaii Real Estate Corp. v. Lichter, 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003) (citation, internal quotation marks and brackets omitted).

The arbitrator's remedial promotions were authorized under the plain language of Article 32 of the CBA. Article 32 defined the scope of the arbitrator's authority, which included deciding whether Employer violated, misinterpreted, or misapplied the CBA. The arbitrator found the oral interview portion of KPD's promotion process "was subjective, arbitrary and capricious[ ]" contrary to Article 47 of the CBA. Accordingly, the arbitrator was authorized to "set aside, reduce[], or otherwise change[]" Employer's denial of promotions to Grievants. Also pursuant to Article 32, the arbitrator was authorized to "award back pay to recompense in whole or in part, the employee for any salary or financial benefits lost, and return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered." (Emphasis added.) The arbitrator determined Grievants "were denied promotion to the Sergeant/Detective position due to subjective, arbitrary and capricious promotional practices" and awarded them remedial promotions. Under Article 32, the arbitrator was authorized to "return to" Grievants the right, benefit or privilege of their promotions that they lost due to the oral interview procedure, which he found improper.

In light of the legislative intent in amending HRS § 89-9(d) to clarify "management rights," and CBA provisions granting the arbitrator broad authority to remedy grievances, we conclude the arbitrator's award did not exceed his authority and the circuit court erred in failing to so conclude.

## IV. CONCLUSION

Therefore, we affirm in part and vacate in part the (1) September 20, 2010 "Order Granting in Part and Denying in Part Grievant SHOPO's Motion to Confirm Arbitrator's Award [Filed 7/20/10]"; (2) September 20, 2010 "Order Granting in Part and Denying in Part Employer's Counter-Motion to Vacate Filed August 5, 2010"; (3) August 6, 2009 "Order Denying Grievant SHOPO's Motion to Confirm Arbitrator's Award [Filed 6/23/09]"; and (4) August 6, 2009 "Order Granting in Part and Denying in Part Employer's Counter-Motion to Vacate [Filed 7/2/09]" all entered in the Circuit Court of the Fifth Circuit and remand this case for orders confirming the arbitrator's decision and award in its entirety.

On the briefs:

Vladimir Devens
for Grievant-Appellant.

Alfred B. Castillo, Jr.
Mauna Kea Trask
Office of the County Attorney,
County of Kaua'i
for Employer-Appellees.