Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001579
18-AUG-2016
09:33 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


IN THE MATTER OF

BERNARD KUAMOO, Complainant-Employee/Appellant-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2010-122),
Respondent-Employer/Appellee-Appellee,
and
STATE OF HAWAI'I, MERIT APPEALS BOARD; COLLEEN R. MEYER;
VALERIE B. PACHECO; ALVIN M. YOSHIMORI (MAB CASE NO. 265),
Agency/Appellees-Appellees
(CIVIL NO. 12-1-1624)


IN THE MATTER OF

DENISE GABRIEL, Complainant-Employee/Appellant-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2010-123),
Respondent-Employer/Appellee-Appellee,
and
STATE OF HAWAI'I, MERIT APPEALS BOARD; COLLEEN R. MEYER;
VALERIE B. PACHECO; ALVIN M. YOSHIMORI (MAB CASE NO. 266),
Agency/Appellees-Appellees
(CIVIL NO. 12-1-1680)


IN THE MATTER OF

ARASI MOSE, Complainant-Employee/Appellant-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-025),
Respondent-Employer/Appellee-Appellee,
and
STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE NO. 274),
Agency/Appellees-Appellees
(CIVIL NO. 12-1-2269)

IN THE MATTER OF

KELII LAU, Complainant-Employee/Appellant-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-022),
Respondent-Employer/Appellee-Appellee,
and
STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE NO. 275),
Agency/Appellees-Appellees
(CIVIL NO. 12-1-2270)

IN THE MATTER OF

FIAFIA SATARAKA, Complainant-Employee/Appellant-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-023),
Respondent-Employer/Appellee-Appellee,
and
STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE NO. 277),
Agency/Appellees-Appellees
(CIVIL NO. 12-1-2271)

NO. CAAP-13-0001579

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

AUGUST 18, 2016

FOLEY AND FUJISE, JJ.
WITH NAKAMURA, C.J. CONCURRING SEPARATELY

OPINION OF THE COURT BY FOLEY, J.

Complainants-Employees/Appellants-Appellants Bernard
Kuamoo (**Kuamoo**), Denise Gabriel (**Gabriel**), Kelii Lau (**Lau**), Arasi
Mose (**Mose**), and Fiafia Sataraka (**Sataraka**) (collectively,
**Appellants**) appeal from the May 24, 2013 "Order Dismissing
Appeal" and June 4, 2013 "Judgment" both entered in the Circuit

2

Court of the First Circuit[1] (**circuit court**).

On appeal, Appellants argue that the circuit court erred by:

(1) affirming the findings of fact (**FOFs**) of Agency/Appellee-Appellee State of Hawai'i Merit Appeals Board (**Board**);

(2) holding that the Board's conclusions of law (**COLs**) "were supported by its [FOFs] and were not made in violation of constitutional or statutory provisions" or "made upon unlawful procedure";[2] and

(3) upholding the Board's determination that the recruitment and examination process of Respondent-Employer/Appellee-Appellee State of Hawai'i, Department of Public Safety (**PSD**) was "fair and impartial."

## I.   BACKGROUND

This is a secondary administrative appeal from five separate Board orders, each entitled "Findings of Fact, Conclusions of Law, Decision and Order"[3] (**FOFs/COLs**), which affirmed PSD's decision not to promote Appellants.

Appellants worked as Adult Correction Officers (**ACO**) for PSD and were members of the United Public Workers Union (**Union**).   Between 2009 and 2010, PSD issued "Departmental Competitive Announcements" for various ACO IV and V positions, which are supervisory positions within PSD (**Supervisory Positions**).[4]   Appellants each submitted applications seeking

---

[1]   The Honorable Rhonda A. Nishimura presided.

[2]   For clarity, this opinion consolidates what was originally the second and third points of appeal in Appellants' opening brief, and addresses the two points as one.

[3]   Although the circuit court consolidated the five appeals, which have similar underlying facts, Appellants initially sought relief before the Board individually.   As a result, the Board filed separate FOFs/COLs for each Appellant.

[4]   PSD's "Departmental Competitive Announcement" advertised the vacant Supervisory Positions.   The announcement indicated:

> **ACO IV SUMMARY OF DUTIES**: Participate in the correctional process of adult residents in a correctional facility as a primary assignment and perform security and custodial duties; or serve as assistant to a higher level officer in
>
> (continued...)

promotions to the Supervisory Positions. Appellants received letters from PSD acknowledging PSD's receipt of Appellants' applications and letters stating that they were each eligible for consideration. Appellants then signed consent and waiver forms, which authorized the release of records and information pertaining to Appellants' backgrounds for the purpose of aiding PSD's determination as to whether Appellants met fitness and suitability requirements for the Supervisory Positions.

In reviewing Appellants' records—including, but not limited to, Appellants' disciplinary records, employment history, and work performance—PSD discovered that Appellants had each been suspended for violating PSD's Standards of Conduct[5] within two years of their application and that there was proper cause for

---

[4](...continued)
charge of an area in a correctional facility on a shift, including the supervision of a small group of correctional officers, and participate in the correctional process of adult residents; and perform other related duties as assigned.

**ACO V SUMMARY OF DUTIES**: Supervise the work of all other corrections officers on a shift in a correctional facility; with limited staff inmate population and program activities; or supervise, through one or more subordinate supervisors, the activities of a functional correctional area in a major correctional facility; and perform other related duties as assigned.

. . . .

**PERSONAL REQUIREMENTS**: Applicants must demonstrate that they possess traits and characteristics required for this work. Among these are: alertness, tact, integrity, honesty, good judgment, and ability to deal with inmates and employees.

. . . .

**QUALITY OF EXPERIENCE**: Possession of the required number of years of experience will not in itself be accepted as proof of qualification for a position. The applicant's overall experience must have been of such scope and level of responsibility as to conclusively demonstrate that he/she has the ability to perform the duties of the position for which he/she is being considered.

[5]     The PSD's Standards of Conduct establishes the proper conduct that ACOs must follow when performing their duties. ACOs are given a copy of the Standards of Conduct during their basic recruit training and are trained on its requirements.

PSD's disciplinary actions.[6] PSD determined that Appellants, based on PSD's background investigations, were "unsuitable" for the Supervisory Positions for the following reasons:

> 1. Inadequate amount of elapsed time from the effective date of your suspension to show rehabilitation.
>
> 2. [Appellants'] decision to violate or disregard the Standards of Conduct.

In separate letters to each Appellant, PSD informed Appellants that they had not been selected for promotions to the Supervisory Positions.

Appellants each wrote internal complaints to PSD requesting reconsideration of its decision, but PSD sustained its determinations of unsuitability without further review. Appellants then individually appealed the PSD's decisions to the Board and the Board held hearings to determine "with respect to the nonselection taken on the [Supervisory Positions], did [PSD] comply with the established laws, rules, regulations, policies, procedures and/or practices governing the selection process."

On February 29, 2012, the Board held separate hearings on Kuamoo and Gabriel's appeals. At Kuamoo's hearing, PSD Personnel Officer Colleen Miyasato (**Miyasato**) testified that the unwritten practice within PSD was to deem applicants as unsuitable for promotion if they had been suspended for violating the Standards of Conduct within two years of when promotion was sought (**suspension policy**). The suspension policy was implemented to prevent the promotion of ACOs who had recently failed to follow the Standards of Conduct. PSD Personnel Management Specialist Clayton Kitamori (**Kitamori**) testified that the suspension policy was developed in 2005 after wardens expressed concern that ACOs were being promoted when they had

---

[6] Kuamoo was suspended for two working days for failing to submit a report of an incident that Kuamoo observed on June 16, 2009. Gabriel was suspended for five working days for a verbal confrontation with another ACO that occurred on April 16, 2009. Lau was suspended for one working day for accruing unauthorized overtime on April 28, 2010. Sataraka was suspended for one working day for improperly releasing an inmate on June 12, 2009. Mose was suspended for ten working days for failing to wear the proper footwear and for sleeping on while on duty on September 10, 2010.

We note that the Union's Unit Collective Bargaining Agreement with PSD provided Appellants with the right to challenge their suspensions through a grievance process, but Appellants did not engage the grievance process.

suspensions on their record. The wardens viewed this as worrisome because the ACOs were "taking on positions that [were] considered to be higher responsibility, these are supervisors." The Board ultimately denied Kuamoo's appeal in a FOFs/COLs dated May 10, 2012 and denied Gabriel's appeal in a separate FOFs/COLs dated May 16, 2012.

On June 20, 2012, the Board held a joint hearing for the appeals of Mose, Lau, and Sataraka. In three separate FOFs/COLs dated August 14, 2012, the Board denied the appeals of Mose, Lau, and Sataraka.

The Board's five FOFs/COLs made nearly identical FOFs and COLs as to each Appellant. Notably, the Board found in each case:

> 14. Appellant did not present credible evidence or argue convincingly that the [PSD] had committed any violations of established laws, rules, regulations, policies, procedures, and/or practices governing the recruitment and examination process in its non-selection of Appellant to the [Supervisory Position].
>
> 15. Conversely, [PSD], through its presentation, documentation, and the testimony of its witnesses, provided credible evidence that the recruitment and examination process was fair and impartial.

In addition, all the Board's FOFs/COLs concluded, "Pursuant to [Hawaii Revised Statutes (**HRS**) §] 91-10(5) [(2012 Repl.)], Appellant has failed to prove by a preponderance of the evidence that [PSD] did not comply with any applicable law, rule, policy, procedure or practice governing the recruitment and examination process."

On June 8, 2012, Kuamoo filed his notice of appeal and on June 15, 2012, Gabriel filed her notice of appeal to the circuit court from the Board's FOFs/COLs. Mose, Lau, and Sataraka also filed individual notices of appeal to the circuit court from the Board's FOFs/COLs on August 30, 2012. On November 16, 2012, the circuit court entered an order consolidating the five appeals.

On May 24, 2013, the circuit court entered its "Order Dismissing Appeal," which (1) affirmed the Board's FOFs/COLs and (2) dismissed all five administrative appeals. Specifically, the circuit court held:

6

> There is evidence in the record on appeal including, but not limited to the testimony of [Kitamori] and the declarations of [Miyasato], Roy Yamamoto and Edwin T. Shimoda, which explained the reasons for the creation of the policy to find employees with a prior suspension for violations of the [PSD's] Standards of Conduct within the past two years not suitable for promotions to [Supervisory Positions] (namely that suspensions for violations of the Standards of Conduct specifically correlate to both the ability to properly and safely perform this very demanding job and supervise others who do so).
>
> These reasons also explained why [PSD] treated suspensions (as opposed to lesser forms of discipline) for violations of the Standards of Conduct as a bright line barrier to future promotions for two years, as opposed to looking at each violation on a case by case basis, as is done by [PSD] with regard to pre-employment past criminal convictions.
>
> The reasons identified by [PSD] support the [FOFs] made by the Board and are neither arbitrary, nor capricious and are reasonably related to bonafide employer concerns. Therefore the Court finds that the Board's [FOFs] do not violate the provisions of HRS § 91-14(g)(5) as they are not clearly erroneous.

On June 4, 2013, the circuit court entered its "Judgment."

On June 21, 2013, the Appellants filed a consolidated notice of appeal from the circuit court's May 24, 2013 "Order Dismissing Appeal" and June 4, 2013 "Judgment."

## II. STANDARD OF REVIEW

"On secondary judicial review of an administrative decision, Hawaii appellate courts apply the same standard of review as that applied upon primary review by the circuit court." AlohaCare v. Ito, 126 Hawai'i 326, 341, 271 P.3d 621, 636 (2012) (quoting Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations, 70 Haw. 72, 80, 762 P.2d 796, 800-01 (1988)).

HRS § 91-14(g) (2012 Repl.), which sets forth the applicable standard of review for administrative appeals, provides:

> §91-14 Judicial review of contested cases. . . . .
>
> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or

(3)     Made upon unlawful procedure; or

(4)     Affected by other error of law; or

(5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     Arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." Save Diamond Head Waters LLC. v. Hans Hedemann Surf, Inc., 121 Hawaiʻi 16, 24, 211 P.3d 74, 82 (2009) (brackets omitted) (quoting Paul v. Dep't of Transp., 115 Hawaiʻi 416, 426, 168 P.3d 546, 556 (2007)). In addition, "[a] conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Save Diamond Head Waters LLC., 121 Hawaiʻi at 25, 211 P.3d at 83 (quoting Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore and Warehouse Union, Local 142, AFL-CIO, 112 Hawaiʻi 489, 499, 146 P.3d 1066, 1076 (2006)).

## III. DISCUSSION

**A.   The circuit court did not err in finding the Board's FOFs were not clearly erroneous.**

Appellants argue that the circuit court erred in finding the Board's FOFs were not clearly erroneous. Appellants' opening brief, however, fails to provide an argument to support their blanket assertion and does not demonstrate how the Board clearly erred in its factual findings.[7]  Therefore, the Board's FOFs must remain undisturbed.  See Kahoʻohanohano v. Dep't of

---

[7]      To the extent that Appellants may attempt to challenge the credibility of PSD's evidence, we note that "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Inoue v. Inoue, 118 Hawaiʻi 86, 101, 185 P.3d 834, 849 (App. 2008) (citation and internal quotation marks omitted).

Human Servs., State of Haw., 117 Hawaiʻi 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008); see also Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

**B. The circuit court did not err in finding the Board's COLs were supported by its FOFs, were not made in violation of the law, and were not made upon an unlawful procedure.**

Appellants argue that the circuit court erred by holding that the Board's COLs "were supported by its [FOFs] and were not made in violation of constitutional or statutory provisions" or "made upon unlawful procedure[.]" Specifically, Appellants contend that PSD violated applicable laws because (1) PSD did not disclose its suspension policy to the Union; (2) PSD's suspension policy violates the "merit principle," as articulated in HRS § 76-1 (2012 Repl.); and (3) PSD was required to engage rule-making procedures under the Hawaiʻi Administrative Procedures Act (**HAPA**) before implementing the suspension policy.

**1. PSD was not required to disclose its suspension policy during Union negotiations.**

Appellants argue that PSD was required to disclose its suspension policy during negotiations with the Union. According to Appellants, "[t]he failure to disclose a critical requirement is inconsistent with the negotiation history between the parties and transparency of the process in other respects." Appellants' opening brief, however, does not provide any factual support for their contention that PSD was required to disclose its suspension policy to the Union and, absent any evidence stating otherwise, we decline to read such a requirement into the record.

Therefore, we turn to whether PDS was required to disclose its policy to the Union under applicable law. HRS § 89-9 (2012 Repl.) codifies an employer's management rights in the context of collective bargaining negotiations, memoranda of agreement, and memoranda of understanding. HRS § 89-9(d); see In re Hawaii Org. of Police Officers, 134 Hawaiʻi 155, 161, 338 P.3d 1170, 1176 (App. 2014), aff'd sub nom. In re Grievance Arbitration Between State Org. of Police Officers, 135 Hawaiʻi 456, 353 P.3d 998 (2015). HRS § 89-9(d) provides, in relevant part:

§89-9 Scope of negotiations; consultation. . . .

(d) . . . . The employer and the exclusive representative shall not agree to any proposal which would be inconsistent with the merit principle . . . which would interfere with the rights and obligations of a public employer to:

. . . .

(2)    Determine qualifications, standards for work, and the nature and contents of examinations;

(3)    Hire, promote, transfer, assign, and retain employees in positions[.]

. . . .

This subsection shall not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions as a permissive subject of bargaining during collective bargaining negotiations or negotiations over a memorandum of agreement, memorandum of understanding, or other supplemental agreement.

(Emphases added.)    Thus, pursuant to HRS § 89-9(d), an employer has the freedom to promote employees based on employer determined qualifications.    Nothing in HRS § 89-9 requires an employer to disclose to the employee representative what qualifications it will consider when promoting employees.    HRS § 89-9 merely gives an employer and the employee representative the option to negotiate promotion procedures and criteria if they wish.    See In re Hawaii Org. of Police Officers, 134 Hawai'i at 162, 338 P.3d at 1177 ("HRS § 89-9(d) represents the legislature's balance between policies of requiring employers to fulfill their 'public responsibility,' which would include consistency with the merit principle, and a public policy of 'allowing the public employees and their employers free range in negotiating the terms of their contract.'" (citation and brackets omitted)).

The record in this appeal includes one Memorandum of Agreement (**MOA**) between PSD and the Union pertaining to "filing vacancies for [the Supervisory Positions]" and two Memoranda of Understanding (**MOUs**) amending the original MOA.    In the MOA, PSD and the Union agreed to the following promotion procedure:

4.    When filling [the Supervisory Positions'] vacancies, the following shall apply:

a.    [PSD] will conduct the process via Internal Vacancy Announcement (**IVA**) recruitment process.

The [PSD's] Personnel Office . . . will be responsible for this process.

. . . .

e.     [PSD's Personnel Office] shall notify employees via IVA and shall:

    . . . .

    2)     Receive and screen applications to ensure employees meet the minimum qualifications for the position this includes, but is not limited to applicants who have documented refusal to accept temporary assignment.

    . . . .

g.     Those applicants who have not passed and not recommended for hire shall be notified accordingly.

h.     [PSD's Personnel Office] shall process those who are initially recommended for hire by the Corrections, three-member panel of subject matter experts accordingly:

    1)     Process the applicant through usual process (e.g., suitability in accordance with Chapter 23-10 Administrative Rules, Chapter 353C-5, Hawaii Revised Statutes).

        a)     Those applicants who are not recommended for hire shall be notified accordingly.

        b)     Those applicants who are cleared shall be recommended for hire and processed accordingly.

(Emphasis added.)

The MOA and MOUs do not contain a procedure for suitability determinations, nor do they contain a list of the criteria that PSD will consider when determining the suitability of ACO applicants. Consequently, PSD retained the right to determine its process for making suitability determinations, and it also retained the right to determine what qualities ACO applicants must possess for PSD to find them suitable for the Supervisory Positions. Therefore, PSD did not violate HRS § 89-9 when it implemented its suspension policy and Appellants' argument is without merit.

    **2. PSD's suspension policy did not violate the "merit principle."**

11

Appellants argue that PSD's suspension policy violates the "merit principle" articulated in article XVI, section 1 of the Hawai'i Constitution[8] and HRS § 76-1 (2012 Repl.).[9] In Hawai'i, the "merit principle" governs the employment of persons in State civil service. Haw. Const. art. 16, § 1. Under HRS § 76-1, "[t]he merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance." "Merit is served through a system of competitive examinations and qualification standards aimed at identifying competent candidates." Konno v. Cty. of Hawai'i, 85 Hawai'i 61, 68, 937 P.2d 397, 404 (1997); see HRS § 76-1(2) (requiring the "[i]mpartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical").

PSD is responsible for ensuring that its employees are of "reputable and responsible character." Hawaii Administrative Rules (**HAR**) § 23-10-2(b) (effective Apr. 15, 2000).[10] To fulfill

---

[8]     Article XVI, section 1 of the Hawai'i Constitution provides, "The employment of persons in the civil service, as defined by law, of or under the State, shall be governed by the merit principle."

[9]     HRS § 76-1 provides, in relevant part:

> **§76-1 Purposes; merit principle.** It is the purpose of this chapter to require each jurisdiction to establish and maintain a separately administered civil service system based on the merit principle. The merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance. It is also the purpose of this chapter to build a career service in government, free from coercive political influences, to render impartial service to the public at all times, according to the dictates of ethics and morality and in compliance with all laws.
>
> In order to achieve these purposes, it is the declared policy of the State that the human resource program within each jurisdiction be administered in accordance with the following:
>
> . . . .
>
> (2)     Impartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical[.]

[10]     HAR § 23-10-2 provides in relevant part:

(continued...)

this responsibility,[11] PSD has the authority to make suitability determinations of a prospective employee's fitness pursuant to HAR § 23-10-6 (effective Apr. 15, 2000), which provides:

> §23-10-6 <u>Suitability determination.</u> A suitability determination may be made on staff member's or prospective staff member's fitness for employment based on criminal history records, employment records, and other such information that the department deems necessary to ensure that staff members and prospective staff members are of reputable and responsible character, and are capable of performing the duties of the job.

Among other factors that PSD considers in determining whether ACO applicants are suitable for promotions to Supervisory Positions, is whether the ACOs have been suspended within the past two years for violating the Standards of Conduct. If ACOs have been suspended within the determined time period, then the PSD deems them unsuitable. According to Kitamori, the impetus for the suspension policy was a concern that ACOs who had been suspended for violating the Standards of Conduct were being promoted to Supervisory Positions, which were "considered to be higher responsibility [positions.]" According to PSD,

---

[10] (...continued)
> §23-10-2 <u>General rule.</u> . . . .
>
> (b) Staff members and prospective staff members shall be of reputable and responsible character. In order to ensure that staff members and prospective staff members are of reputable and responsible character and are capable of performing the duties of the job, suitability assessments shall be ongoing and shall include periodic criminal history checks and such other investigation as the department deems necessary.

[11] During Kuamoo's Board hearing, Kitamori, PSD's Personnel Management Specialist, described the process PSD follows to fill vacant Supervisory Positions:

> [KITAMORI:] We do a written test, and if the person have to pass with a minimum 70 percent, then we go by workplace seniority. And depending how many vacancies are available, we then contact the senior person to do for background suitability.
>
> [PSD'S COUNSEL:] And what does the term background suitability mean?
>
> [KITAMORI:] Suitability is just an examination process whereby we do like a fitness for employment. It covers some predetermined things that we have to look at, and before we can deem someone suitable or not. And this is just for to measure the -- we consider it to be for the reputable and responsible character of the individual.

This process is consistent with the negotiated process articulated in the MOA and MOUs.

suspensions on an ACO's record indicates the ACO "[could ]not follow their own Standards of Conduct." PSD wanted to "make sure that whoever [PSD is] promoting [is] going to follow the same Standards of Conduct that they're going to enforce upon whoever they supervise."

PSD's suspension policy is objective and speaks directly to PSD's responsibility to ensure that whomever it promotes to the Supervisory Positions has the necessary fitness and character to fulfill the duties of the Supervisory Position, which includes ensuring that other ACOs do not violate the Standards of Conduct. PSD's suspension policy, therefore, does not violate the "merit principle" pursuant to HRS § 76-1.

### 3. PSD's suspension policy was not a "rule" subject to HAPA's rule-making requirements.

Appellants argue that PSD improperly promulgated a "rule" in violation of HAPA, HRS §§ 91-1 et seq. (2012 Repl.), when it implemented its unwritten suspension policy in 2005. In general, "[a] state agency must conform to the requirements of HAPA when acting in a rule-making capacity." Rose v. Oba, 68 Haw. 422, 425, 717 P.2d 1029, 1031 (1986). HRS § 91-1(4) defines a "rule" as "each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." However, "[t]he term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda." HRS § 91-1(4) (emphasis added). Under Hawai'i case law, informal policies that relate to an agency's hiring policies are not "rules" and therefore, are exempt from HAPA's public rule-making requirements. See Gibb v. Spiker, 68 Haw. 432, 435, 718 P.2d 1076, 1078-79 (1986) (holding that "The decision not to rehire [the former police chief] based on an informal, unwritten policy against hiring anyone under investigation for possible criminal wrongdoing was a purely internal management function not within the scope of HRS § 91-1(4).").

PSD's suspension policy only affects current ACOs and only applies to PSD's internal promotion decisions. The suspension policy is, therefore, purely an "internal management" function that does not affect the "private rights of or procedures available to the public." See Waugh v. Univ. of Hawaii, 63 Haw. 117, 131, 621 P.2d 957, 968 (1980) (holding that "[T]he area of concern raised by appellant is exempted from public rule-making procedures" because "the 'rules' of practice which appellant claims the University should be required to promulgate would affect only the staff and faculty of the University and not the 'private rights of or procedures available to the public.'"). Because PSD's suspension policy is not a "rule" as contemplated by HRS § 91-14(4), the policy is not subject to HAPA's rule-making procedures and Appellants' argument is without merit.

**C.    The Board did not err in determining that PSD's recruitment and examination process was "fair and impartial."**

Appellants argue that the circuit court erred in upholding the Board's determination that "PSD, through its presentation, documentation, and the testimony of its witnesses, provid[ed] credible evidence that the recruitment and examination process was fair and impartial. . . ."[12] Appellants maintain that, although PSD has the authority to make its own suitability determinations under HAR § 23-10-1, PSD could not base its suitability determination solely upon its suspension policy because "[t]he definition [of suitability] does not state that any one factor will preclude an applicant from a positive finding of suitability."

While Appellants characterize PSD's suitability determination as being based on "one factor," the Board's unchallenged [FOFs] found that PSD deemed Appellants unsuitable

---

[12]    Appellants argue in their opening brief that this court should review the Board's determination that the promotion process was "fair and impartial" for abuse of discretion standard, pursuant to HRS § 91-14(g)(6). However, we note that because the Board's determination presented a mixed question of law and fact, we review the alleged error under a clearly erroneous standard. See Save Diamond Head Waters LLC., 121 Hawai'i at 25, 211 P.3d at 83 ("A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." (citation and internal quotation marks omitted)).

for two reasons: (1) "Inadequate amount of elapsed time from the effective date of the suspension to show rehabilitation" and (2) "[Appellants'] decision to violate or disregard the Standards of Conduct." The Board's finding is consistent with PSD's letters to each Appellant notifying them of the two reasons PSD found them unsuitable and Kitamori's testimony that PSD not only considers whether an ACO has a suspension on record for its suitability determinations, but also takes into consideration when a suspension was received.[13]

HAR § 23-10-6 grants PSD with the discretion to make suitability determinations "based on criminal history records, employment records, and other such information that the department deems necessary to ensure that staff members and prospective staff members are of reputable and responsible character, and are capable of performing the duties of the job[,]" without limiting the weight that PSD may place on any one factor. Appellants suggest that PSD should review each ACO's suspension on a case-by-case basis before making suitability determinations, the same way PSD approaches criminal convictions. However, PSD is required to consider the circumstances of an ACO's criminal conviction when making employment decisions by both statute and rule, whereas no such statute or rule requires the same consideration for a suspension issued by PSD. See HRS § 353C-5 (2015 Repl.);[14] HAR § 23-10-7 (2000).[15]

_____

[13]     Even if PSD's suitability determinations were based on one factor, Appellants' argument is without merit. Appellants suggest that this court "use the federal government's standard for suitability determinations as guidance in finding that an absolute bar on promotion due to employee misconduct violates the merit principle." Appellants' reliance on federal law, however, is misguided because federal agencies are not precluded from making suitability determinations based solely on an employee's misconduct. See 5 C.F.R. § 731.202(a) (providing that "[the Office of Personnel Management (OPM)], or an agency in which OPM has delegated authority, must base its suitability determination on the presence or absence of one or more" factors enumerated in the regulation, including "[m]isconduct or negligence in employment" (emphasis added)).

[14]     HRS § 353C-5 provides in relevant part:

          §353C-5 Criminal history record checks.  (a) The department shall develop standards to ensure the reputable and responsible characters of staff members of its correctional facilities which shall include criminal history record checks.

                    . . . .

                                        (continued...)

Furthermore, during the Board's hearings, Kitamori testified that the PSD considers whether the circumstances underlying a criminal conviction are relevant to an applicant's

---

[14](...continued)
  (d) The department may deny employment to a prospective staff member who was convicted of a crime other than a minor traffic violation involving a fine of $50 or less and if the department finds from the prospective staff member's criminal history record that the prospective staff member poses a risk to the health, safety, security, or well-being of inmates under supervision and confinement, other staff, or the public at large.

  (e) Staff members shall not be subject to termination based on findings in their criminal records except for those whose conviction of a crime occurred after May 8, 1989, or under circumstances in which a staff member is a fugitive from justice. Staff members shall be subject to termination for crimes other than a minor traffic violation involving a fine of $50 or less, where because of the staff member's conviction record, the staff member poses a risk to the health, safety, security, or well-being of inmates under supervision and confinement, other staff, or the public at large.

[15]    HAR § 23-10-7 provides:

  §23-10-7 Denial or termination of employment. In addition to any existing rules and regulations, the department may deny or terminate employment:

  (1)    If the department determines after investigation that the prospective staff member is not suitable for employment, or the staff member is not suitable for continued employment;

  (2)    If the prospective staff member was convicted of a crime other than a minor traffic violation involving a fine of fifty dollars or less and the department finds from the prospective staff member's criminal history record that the prospective staff member poses a risk to the health, safety, security or well being of inmates under supervision and confinement, other staff, or the public at large.

  (3)    If the staff member was convicted of a crime other than a minor traffic violation involving a fine of fifty dollars or less, and the department determines that the staff member poses a risk to the health, safety, security or well-being of inmates under supervision and confinement, other staff, or the public at large. Staff members shall not be subject to termination based on findings in their criminal records except for conviction of a crime which occurred after May 8, 1989;

  (4)    If the prospective staff member or staff member is a fugitive from justice; or

  (5)    Other good cause as determined by the department or director.

underlying a criminal conviction are relevant to an applicant's ability to perform the duties of the Supervisory Position. In contrast, an ACO applicant's suspension for violating the Standards of Conduct needs no further inquiry because an ACO's suspension is, by its very nature, indicative of whether the ACO possesses the necessary fitness and character to supervise the conduct of others. PSD provided testimony that its suspension policy is meant to ensure "that whoever [PSD is] promoting [is] going to follow the same Standards of Conduct that they're going to enforce upon whoever they supervise."

PSD provided sufficient evidence that its process for promoting ACOs to Supervisory Positions, including its suspension policy, was tailored towards ensuring that whomever is promoted possesses the necessary fitness and character to perform the duties of the job. Therefore, the Board's determination that PSD's process for promoting ACOs was "fair and impartial" was not clearly erroneous. See Save Diamond Head Waters LLC., 121 Hawai'i at 25, 211 P.3d at 83.

### IV. CONCLUSION

The May 24, 2013 "Order Dismissing Appeal" and June 4, 2013 "Judgment" both entered in the Circuit Court of the First Circuit are affirmed.

On the briefs:

Lowell K.Y. Chun-Hoon
Tatjana A. Johnson
(King, Nakamura & Chun-Hoon)
for Complainants-Employees/
Appellants-Appellants.

James E. Halvorson
Richard H. Thomason
Deputy Attorneys General
for Respondent-Employer/
Appellee-Appellee.

John S. Mukai
Deputy Corporation Counsel
City and County of Honolulu
for Agency-Appellees.