**Electronically Filed
Supreme Court
SCWC-13-0001579
28-JUN-2018
08:42 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

IN THE MATTER OF

BERNARD KUAMOO,
Petitioner/Complainant-Employee/Appellant-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2010-122)
Respondent/Respondent-Employer/Appellee-Appellee,

and

STATE OF HAWAI'I, MERIT APPEALS BOARD; COLLEEN R. MEYER;
VALERIE B. PACHECO; ALVIN M. YOSHIMORI (MAB CASE No. 265),
Respondents/Agency/Appellees-Appellees
(CIVIL NO. 12-1-1624)

_____

IN THE MATTER OF

DENISE GABRIEL,
Petitioner/Complainant-Employee/Appellant-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2010-123)
Respondent/Respondent-Employer/Appellee-Appellee

and

STATE OF HAWAI'I, MERIT APPEALS BOARD; COLLEEN R. MEYER;
VALERIE B. PACHECO; ALVIN M. YOSHIMORI (MAB CASE No. 266),
Respondents/Agency/Appellees-Appellees

(CIVIL NO. 12-1-1680)

_____

IN THE MATTER OF

ARASI MOSE,
Petitioner/Complainant-Employee/Appellant-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-025)
Respondent/Respondent-Employer/Appellee-Appellee,

and

STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE No. 274),
Respondents/Agency/Appellees-Appellees
(CIVIL NO. 12-1-2269)

_____

IN THE MATTER OF

KELII LAU,
Petitioner/Complainant-Employee/Appellant-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-022)
Respondent/Respondent-Employer/Appellee-Appellee,

and

STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE No. 275),
Respondents/Agency/Appellees-Appellees
(CIVIL NO. 12-1-2270)

_____

IN THE MATTER OF
FIAFIA SATARAKA,
Petitioner/Complainant-Employee/Appellant-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY (2011-022)
Respondent/Respondent-Employer/Appellee-Appellee,

and

STATE OF HAWAI'I, MERIT APPEALS BOARD; ALVIN M. YOSHIMORI;
VALERIE B. PACHECO; JANICE T. KEMP (MAB CASE No. 277),
Respondents/Agency/Appellees-Appellees
(CIVIL NO. 12-1-2271)

_____

SCWC-13-0001579

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0001579)

JUNE 28, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

Bernard Kuamoo, Denise Gabriel, Arasi Mose, Kelii Lau, and Fiafia Sataraka (the employees or applicants) are employed by the Department of Public Safety as Adult Correction Officers. Each applied for promotion to open supervisory positions, and each was rejected based on an unwritten department policy. Under the unwritten policy, the department precludes from promotion to supervisory positions all employees who have been suspended for violation of the department's standards of conduct in the prior two years. The unwritten policy applies without exception. Each applicant had passed the relevant examination and was otherwise qualified for the supervisory position prior to being deemed "unsuitable" under the unwritten policy.

At issue is whether the department's policy violates aspects of the merit principle on which the Hawai'i civil service system is founded. See Haw. Const. art. XVI, § 1 (mandating that the "employment of persons in the civil service, as defined

3

by law . . . shall be governed by the merit principle"); HRS § 76-1. As explained below, we hold the department's unwritten policy violates the merit principle.

## I. BACKGROUND

The applicants are Adult Corrections Officers (ACO) employed by the Department of Public Safety (PSD or the department). Each applied for a promotion to an open supervisory position, either ACO IV (sergeant) or ACO V (lieutenant) positions. Each was informed by department letter that his or her application had been denied. The letters noted that a background check revealed the applicant had violated the department's standards of conduct and been suspended, sometimes for as little as one day. According to the letters, the department deemed each applicant "unsuitable" for promotion for the following two reasons:

> 1. Inadequate amount of elapsed time from the effective date of your suspension to show rehabilitation.
>
> 2. Your decision to violate or disregard the Standards of Conduct.

The department characterized its decision as a determination that the applicant is deemed "temporarily unsuitable" for the position.

The employees individually challenged PSD's denial of their application for promotion to the Merit Appeals Board (MAB). According to testimony before the MAB, the selection

process for ACO IV and V positions consists of several stages. The department first administers a written examination to applicants. Applicants must receive a minimum score of 70 percent on the examination in order to be considered qualified for the positions. Those applicants who pass the written examination are then ranked by seniority. Depending on how many vacancies are available, the department contacts applicants by seniority and solicits permission to conduct a background check regarding the applicant's "suitability," which includes a review of employment records. If review of an applicant's employment records reveals a suspension within the prior two years, the applicant is deemed "temporarily unsuitable."

The department's unwritten policy deems as unsuitable any applicant for promotion into a supervisory position who has been suspended within the prior two years. That policy was developed in 2005 to address concerns by wardens about ACOs with recent suspensions being promoted. A department personnel specialist conceded there is no written documentation of the concerns giving rise to the policy. But the specialist asserted that the policy attempted to "make sure that whoever we're promoting [is] going to follow the same Standards of Conduct that they're going to enforce upon whoever they supervise." ACOs receiving a suspension were never informed that the suspension would act as a bar on promotions for the next two

years.  While applicants to supervisory ACO positions were informed about the other minimum qualifications before applying, they were never informed of the existence of the suspension policy until after their application was denied.  The MAB denied each of the employees' appeals.

The applicants individually appealed the MAB decisions to the First Circuit Court.[1]  The circuit court consolidated the five appeals, affirmed the MAB's findings of fact and conclusions of law, and dismissed the applicants' consolidated appeals.  The court explained that the department had advanced a reasonable basis for the suspension policy, namely, "that suspensions for violations of the Department's Standards of Conduct specifically correlate to both the ability to properly and safely perform this very demanding job and supervise others who do so."  The circuit court found that the same reasons explained why the department treated suspensions "as a bright line barrier to future promotions for two years, as opposed to looking at each violation on a case by case basis, as is done by the Department with regard to pre-employment past criminal convictions."  The applicants appealed to the ICA, and the ICA affirmed the circuit court.  Matter of Kuamoo, 138 Hawai'i 494, 505, 382 P.3d 306, 317 (App. 2016).

---

[1]     The Honorable Rhonda A. Nishimura presided.

The ICA held that the circuit court correctly ruled that the MAB's findings of fact were not clearly erroneous, that the MAB's conclusions of law were supported by its findings of fact, and that the conclusions of law were not errors of law. Id. at 500-03, 382 P.3d at 312-15. In particular, the ICA concluded that the department's suspension policy did not violate the merit principle. The ICA noted that the department is vested with authority to make "suitability determinations" under the Hawai'i Administrative Rules (HAR). Id. at 502-03, 382 P.3d at 314-15 (citing HAR § 23-10-2(b)). According to the department, suspensions on an ACO's record indicate that the ACO could "not follow their own Standards of Conduct." Id. at 503, 382 P.3d at 315. As the ICA explained, "PSD wanted to 'make sure that whoever [PSD is] promoting [is] going to follow the same Standards of Conduct that they're going to enforce upon whoever they supervise.'" Id. (citing PSD testimony).

Given the department's authority to make suitability determinations, as well as the department's proffered rationale for the suspension policy, the ICA concluded that the policy did not violate the merit principle of impartial selection of individuals based on objective criteria.

> PSD's suspension policy is objective and speaks directly to PSD's responsibility to ensure that whomever it promotes to the Supervisory Positions has the necessary fitness and character to fulfill the duties of the Supervisory Position, which includes ensuring that other ACOs do not

> violate the Standards of Conduct.  PSD's suspension policy, therefore, does not violate the "merit principle" pursuant to HRS § 76-1.

Id.

The ICA also rejected the employees' argument that the selection process was not "fair and impartial," as required by the merit principle.  The employees had argued that applicants for the supervisory position with prior criminal records were given case-by-case suitability determinations.  In contrast, applicants who were merely suspended for as little as a day for violating one of the department's standards of conduct within the two-year window were uniformly denied promotion rather than afforded a case-by-case suitability determination.  The ICA rejected the applicants' argument, observing that the department's regulations give it the authority to decide a prospective employee's fitness for department positions.  Id. (citing HAR § 23-10-6).  HAR § 23-10-6 authorizes suitability determinations to be made based on "fitness for employment." The regulation allows the department's suitability determination to draw on information from criminal history records, employment records, or other sources of information.  The purpose of the suitability determination is to "ensure that staff members and prospective staff members are of reputable and responsible character, and are capable of performing the duties of the job." Id.; Kuamoo, 138 Hawai'i at 502-03, 382 P.3d at 314-15.

On certiorari, the employees argue that the ICA's opinion sanctions "the use of undisclosed criteria" in hiring, which could "in turn sanction the retroactive use of similar secret standards in a way that is antithetical to the merit principle."[2]

## II.  STANDARDS OF REVIEW

Under Hawaii's Administrative Procedure Act, we review agency decisions and orders for constitutional or statutory violations, actions beyond the agency's authority or jurisdiction, clearly erroneous findings of fact, unlawful procedure or other errors of law, arbitrary and capricious decisions or orders, and abuses of discretion or clearly unwarranted exercises of discretion.  HRS § 91-14(g)(1)-(6) (2012).  We review conclusions of law presenting mixed questions of fact and law "under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case."  Save Diamond Head Waters LLC. v. Hans Hedemann Surf, Inc., 121 Hawai'i 16, 25, 211 P.3d 74, 83 (2009)(citation omitted).  When we review an agency decision that has been appealed to the circuit court sitting in its

---

[2]  In their application, the employees assert that the ICA "mistakenly construed the present dispute as one over whether the Employer's duty to negotiate with the Union when that contention was never addressed by the Union or the Appellants."  Instead, the employees assert, they "simply contended that the ban and its non-disclosure violated the openness, fairness, and objectivity mandated by the merit principle as defined in HRS § 76-1.  Accordingly, we do not address any implications of the suspension policy for collective bargaining.  See Kuamoo, 138 Hawai'i at 500-502, 382 P.3rd at 312-314.

appellate capacity, we apply "the same standard of review as that applied upon primary review by the circuit court." AlohaCare v. Ito, 126 Hawai'i 326, 341, 271 P.3d 621, 636 (2012) (citation omitted).

### III. DISCUSSION

The employees argue that the department's policy, and the ICA's affirmance of the MAB orders upholding the policy, "sanction the use of undisclosed criteria" in hiring, which could "in turn sanction the retroactive use of similar secret standards in a way that is antithetical to the merit principle."

### A. The merit principle

"The employment of persons in the civil service, as defined by law . . . shall be governed by the merit principle." Haw. Const. art. XVI, § 1. As embodied in the Hawai'i Constitution, the merit principle "simply means that the civil service, however defined, is to be governed by merit principles." Konno v. Cty. of Hawai'i, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997). The Hawai'i Constitution does not itself "establish an independently enforceable right to the protection of merit principles." Id. Rather, the constitution "expressly refers to other sources for a definition of 'civil service,'" such as statutory and case law. Id.

The civil service statute defines the merit principle broadly as "the selection of persons based on their fitness and

10

ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance." HRS § 76-1 (2000). In order to achieve the broad purpose of selecting civil service employees based on fitness and ability, the statute requires, among other things, "[i]mpartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical[.]" HRS § 76-1(2). As we have explained, our civil service system "embodies positive principles of public administration such as openness, merit, and independence. Openness is served through public announcement of job vacancies, clear articulation of qualifications, open application to all persons, and selection according to objective criteria." Konno, 85 Hawai'i at 68, 937 P.2d at 404 (citations omitted); Salera v. Caldwell, 137 Hawai'i 409, 417, 375 P.3d 188, 196 (2016).

**B. The unwritten "brightline" suspension policy violates the merit principle of openness in the application process for civil service positions**

The employees assert that the department's "complete failure to disclose the two-year bar on suspensions for employees seeking promotion is the antithesis of the openness and public articulation of objective standards required by the merit principle." We agree that the failure to disclose the two-year bar violates the merit principle.

11

As a general matter, the merit principle requires "clear articulation of qualifications" and "open application to all persons[.]"  Konno, 85 Hawai'i at 68, 937 P.2d at 404 (citations omitted).  Here, the department failed at the outset of the application process to make known to applicants for the supervisory positions a critical requirement for the positions.  If an applicant had been suspended for any reason and for any length of time in the prior two years, the applicant was deemed by the department's unwritten suspension policy to be "temporarily unsuitable" for the supervisory positions, even if the applicant was otherwise qualified for the positions.

The suspension policy was a brightline rule applied without exception.  For that reason, the absence of a suspension within the prior two years was the functional equivalent of a significant minimum qualification for the position.  Yet that qualification (or disqualifying factor) was never included in any announcement of the position openings, and the applicants were made aware of that qualification only at the end of the process, by the department's letters rejecting the applicants for the positions.  Moreover, as embodied in an underline unwritten policy, the additional qualification for the position was not articulated at all.  This lack of openness regarding a significant qualification (or disqualifying factor) for the supervisory positions was compounded by the "notice of

disposition of application" sent to the applicants.  It states: "You have met the minimum qualification and other requirements for this vacancy."  (Emphasis added).  The notice then provides instructions on taking the written examination, which each of the applicants later passed.

The language in the "notice of disposition of application" is inaccurate; there were, in fact, additional "other requirements" for the supervisory positions.  However, those other requirements, embodied in the unwritten brightline suspension policy, remained unarticulated and unannounced. Applicants were given no notice of the full set of significant minimum requirements for the position until after they were rejected for the positions.[3]  In sum, the silent imposition of a de facto minimum qualification for the supervisory positions violated the merit principles of openness and clear articulation of qualifications.

We hold that an unwritten policy which imposes a significant qualification or disqualification for a position, and which is not otherwise made known to applicants at or near the outset of the application process, violates the merit

---

[3]      We recognize there is a difference between meeting the minimum requirements for an ACO IV or V position and the further step of receiving a positive suitability determination.  See HAR § 23-10-2(b).  Here, however, precisely because the suitability determination was based on the brightline suspension policy and was applied without exception, the unwritten policy operated as a minimum requirement for the supervisory positions.

principle of openness.  HRS § 91-14(g)(4)(authorizing an appellate court to reverse an agency decision or order if substantial rights of petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are affected by an error of law).

## IV.  CONCLUSION

For the reasons stated above, we vacate the ICA's opinion and judgment on appeal, as well as the circuit court's order dismissing the applicants' consolidated appeal.  We remand to the circuit court with instructions to remand to the Merit Appeals Board for proceedings consistent with this opinion.

| | |
|---|---|
| Lowell K.Y. Chun-Hoon | /s/ Mark E. Recktenwald |
| Tatjana A. Johnson | |
| For petitioners | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| James E. Halvorson | |
| Deputy Attorney General | /s/ Richard W. Pollack |
| For respondent | |
| | /s/ Michael D. Wilson |

